IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

NINA AMAYY' EDE JONES, *et al.*,

        Plaintiffs,

    v.                                  Civil Action No.  AW-04-1735

PRINCE GEORGE'S COUNTY, *et al.*,

        Defendants.

---

## MEMORANDUM OPINION

Currently pending before this Court are the following motions:  (1) Defendants' Motion to Dismiss Counts One, Five, Six, and Seven of Plaintiffs' Second Amended Complaint [123]; (2) Plaintiffs-Intervenors' Motion for Summary Judgment [134]; (3) Defendants' Motion for Temporary Stay [136][1]; and (4) Plaintiffs' Motion for Summary Judgment [139].  The aforementioned motions have been fully briefed by the parties and are ripe for consideration.  No hearing is deemed necessary.  See Local Rule 105.6 (D. Md. 2004).  Upon consideration of the aforementioned motions, the Court makes the following determinations.

### FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken in the light most favorable to the Plaintiffs.  The claims in this case

---

[1] Defendants' have requested that this Court approve a temporary stay in this matter until the Court issues a ruling on the Motion to Intervene and Consolidate in the parallel action of Mabel Jones, et al  v. Prince George's County, et al, Civ. No. AW-04-3044.  Defendants' basis for this request is that the pending Motion to Intervene and Consolidate specifically raises the issue of who has standing to bring the wrongful death claims on behalf of the minor.  Because a resolution on Plaintiffs-Intervenors Motion to Intervene and Consolidate has been issued, Defendants' Motion for a Temporary Stay is denied as moot.

arose out of the death of Prince Carmen Jones, Jr. ("the decedent").  In the early morning hours of September 1, 2000, Prince George's County ("PG County") police officers Carlton B. Jones ("Officer Jones") and Alexandre Bailey ("Officer Bailey"), were conducting police surveillance activities in the District of Columbia.  In the course of these activities, Officers Jones and Bailey, followed the decedent's vehicle from the District of Columbia into PG County, Maryland, back through the District of Columbia, and into Fairfax County, Virginia.  The decedent, a resident of Maryland, was driving into Fairfax County, Virginia to visit his fiancee, Candace Jackson, who resided in Virginia.  When the decedent pulled into a driveway in a residential street in Fairfax County, Officer Jones pulled up behind him and blocked his exit.  Officer Jones exited his vehicle, exhibited his weapon, but allegedly failed to identify himself as a police officer.  The decedent attempted to flee the scene, and Officer Jones fired sixteen rounds, five of which struck the decedent.  The decedent died from these injuries.

On February 28, 2001, Prince Carmen Jones, Sr., the father of the decedent, as co-guardian of the decedent's child Nina Jones, and Candace Jackson, as co-guardian and next friend of Nina Jones, filed a complaint against Defendants PG County, PG County Police Chief John Farrell ("Chief Farrell"), and Officers Jones and Bailey, pursuant to the Maryland Constitution and the Maryland Wrongful Death Act, Md. Cts. & Jud. Proc. Code Ann. § 3-901, et seq.  Plaintiffs alleged, *inter alia*, that Officer Jones used excessive force and that he followed the decedent's vehicle into Fairfax County, Virginia, initiated a confrontation, and wrongfully shot the decedent.

On May 6, 2004, Plaintiffs filed a second amended complaint.  Counts I, II, III, and IV assert claims under Maryland common law and Counts V, VI, and VII assert claims under federal law.  Specifically, Plaintiffs' Second Amended Complaint asserts the following:  Count I — Violations of the

2

Maryland Constitution claims (Maryland Wrongful Death Act) alleged against Defendants Jones, Bailey, Farrell, and PG County; Count II — Negligence claims (Maryland Wrongful Death Act) alleged against Defendants Jones, Bailey, Chief Farrell and PG County; Count III — Battery claim (Maryland Wrongful Death Act) alleged against Defendant Carlton B. Jones; Count IV — Direct Liability of PG County for Negligent Failure to Train and Supervise (Maryland Wrongful Death Act) claims alleged against Defendant PG County; Count V — 42 U.S.C. § 1983 Excessive Force claim alleged against Defendant Carlton Jones; Count VI — 42 U.S.C. § 1983 Supervisory Liability claim alleged against Defendant Bailey; and Count VII — 42 U.S.C. § 1983 Monell claim alleged against Defendant PG County and Defendant Farrell.

On June 6, 2004, Defendants removed the action to this Court.  Following removal, this Court held an oral hearing on all pending motions.  On September 28, 2004 this Court entered a Memorandum Opinion & Order which, *inter alia*, granted-in-part and denied-in part Defendants' Motion to Dismiss. This Court granted governmental immunity for Defendants PG County and Chief Farrell with respect to the state tort claims, and denied governmental immunity for those same Defendants with respect to state constitutional claims.  Therefore, this Court dismissed Count II of Plaintiffs' Second Amended Complaint, and dismissed Count IV only with respect to individual Defendants Chief Farrell and PG County.

On November 9, 2004, Defendants' filed a Motion to Dismiss Counts One, Five, Six, and Seven of Plaintiffs' Second Amended Complaint.  On January 25, 2004, Plaintiffs-Intervenors filed a Motion for Summary Judgment.  On February 7, 2005, Plaintiffs' filed a Motion for Summary Judgment.  Those motions are ripe, and a Memorandum Opinion & Order is now issued.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint.

See Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994).  "In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support his claim and would entitle [him] to relief."  CTI/DC, Inc. v. Selective Ins. Co. of Am., 392 F.3d 114, 117 (4th Cir. 2005) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)).  When reviewing a complaint under Rule 12(b)(6), a court should accept as true all well-pleaded allegations and should view the complaint in the light most favorable to the plaintiff.  Id.  Because the purpose of Rule 12(b)(6) is to test a complaint's legal sufficiency, however, a court need not accept the legal conclusions a plaintiff draws from its factual allegations.  Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir.1991).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The Court construes the evidence and draws all  reasonable inferences in the light most favorable to the nonmovant.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

## DISCUSSION

I.      Defendants' Motion to Dismiss Counts One, Five, Six, and Seven of Plaintiffs' Complaint

A.      Federal claims

By way of their motion to dismiss, Defendants contend that the federal claims in Plaintiffs' second amended complaint should be dismissed on the grounds that:  (1) Plaintiffs have asserted that Defendant

officers were not state actors, there can be no constitutional violation;[2] and in the alternative, (2) even assuming state action exists, Section 1983 claims cannot be brought in circumstances where the decedent's family members allege that their own constitutional rights were violated as a result of the decedent's death. The Court will address each argument in turn.

      i.     *Acting Under "color of law"*

To state a claim for relief under Section 1983, litigants have the burden of alleging two elements: (1) that a person "acting under color of law" committed, by act or omission, the conduct of which the plaintiff complain; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981); Mentavlos v. Anderson, 249 F.3d 301, 310 (4th Cir. 2001).

The Supreme Court has held that acting "under color of state law" requires that a defendant in a Section 1983 action have exercised the power "possessed by virtue of state law and made possible only because the wrongdoer is clothed by the authority of the state." West v. Atkins, 487 U.S. 42, 48 (1988). It is the nature of the act performed, not the clothing of the actor or even the status of being on-duty, or off-duty, which determines whether the officer has acted under the color of law. See Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989) ("[T]he lack of outward indicia suggestive of state authority — such as being on duty, wearing a uniform, or driving a patrol car — are not alone determinative

---

[2] Defendants also posit that Plaintiffs have conceded in their pleadings to the Court that the actions of Officers Bailey and Jones were those of private citizens rather than public officials. The Court's review of the record, however, shows that Plaintiffs merely contended that the aforementioned officers lacked the power to act as public officials *in Virginia* at the time of the decedent's death. Therefore, Defendants' argument fails.

of whether a police officer is acting under color of law.  Rather the nature of the act performed is controlling."). "The act therefore must be carefully scrutinized to determine whether an officer, when either on or off duty, is acting under color of state law." Id. The Fourth Circuit has emphasized, however, that misuse of power possessed by virtue of state law, as opposed to a "purely personal pursuit," falls within the scope of Section 1983. Id.

Here, on September 1, 2000, Officer Jones, a corporal with the PG County Police Department, followed the decedent's vehicle from the District of Columbia, into Maryland, back through the District of Columbia, and eventually into Fairfax County, Virginia.  Officer Jones then pulled his vehicle behind the decedent's vehicle, blocked its exit from the driveway, and fired sixteen shots at the decedent, five of which struck the decedent in the back and one of which struck the decedent in his arm.  Officer Jones's actions occurred while he on duty as a police officer, and while he was conducting police surveillance of the decedent.[3]  Therefore, Officer Jones's actions amounted to misuse of power under state law, which falls under Section 1983.  Because Officer Jones's conduct amounted to state action, he is presumed to have acted under state law.

Officer Bailey's conduct also amounts to a misuse of power under state law.  Officer Bailey, a sergeant with the PG County Police Department, was also on duty on September 1, 2000, and followed the decedent from the District of Columbia, into Maryland, back through the District of Columbia, and into

---

[3] The Court notes that Defendants contend that the deprivation of a constitutional right is not implicated by virtue of surveillance.  Defendants are correct that mere surveillance is not a seizure under the Fourth Amendment.  Nevertheless, Defendants argument is remise.  The Court's inquiry here is not whether a deprivation of a constitutional right occurred, but rather whether Defendants actions occurred "under the color of law."

Fairfax County, Virginia.  As a sergeant, Officer Bailey was supervising Officer Jones on the day that

Officer Jones shot and killed the decent.  Additionally, Officer Bailey was also conducting police

surveillance of the decedent immediately prior to his death.  Therefore, Officer Bailey's actions also amount

to state action, and he is presumed to have acted pursuant to state law.

      ii.    *Deprivation of a Constitutional Right*

Even if Plaintiffs adequately allege that the conduct complained of was committed by a person

acting under the color of state law, a valid Section 1983 claim must allege that such conduct deprived a

person of a cognizable constitutional right.  <u>See</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 331 (1986).

Defendants argue that Section 1983 claims cannot be brought when the decedent's family members allege

that their own constitutional rights were violated by the decedent's death.  Plaintiffs contend that their

complaint does not allege that their own constitutional rights have been violated.  Instead, Plaintiffs assert

that their complaint alleges that the decedent's rights were violated.

Plaintiffs' complaint asserts the following Section 1983 claims:

Count V (Excessive Force):  "Nina Jones and Prince Jones, Jr.'s parents' constitutional rights under the Fourteenth Amendments were injured by the unconstitutional seizure of Prince Jones, Jr.";

Count VI (Supervisory Liability): "Nina Jones and Prince Jones, Jr.'s parents' constitutional rights under the Fourth and Fourteenth Amendments";

Count VII (<u>Monell</u> Claim): "Nina Jones and Prince Jones' parents were injured by the unconstitutional policies and practices of Chief John Farrell and Prince George's County."

Based on the plain language of Plaintiffs' complaint, the Court finds that Plaintiffs are indeed  alleging that

their own constitutional rights were violated by the decedent's wrongful death.

Nevertheless, it is unclear to the Court whether Plaintiffs are asserting violations of their own

constitutional rights solely under the Fourth Amendment or whether Plaintiffs are asserting violations of their own constitutional rights pursuant to the Fourteenth Amendment. In other words, a careful reading of Plaintiffs' complaint leads to the question of whether, and to what extent, Plaintiffs are seeking to assert violations of their constitutional rights (1) under the Fourth Amendment's prohibition of unreasonable seizures of the person *as incorporated* under the Fourteenth Amendment or (2) under the Fourteenth Amendment protection for the loss of love and support of a family member *in addition* to the Fourth Amendment. Regardless of which constitutional right Plaintiffs are ultimately asserting, or whether Plaintiffs are seeking to assert both claims, the Court concludes that Plaintiffs' complaint fails to state a claim under either provision.

Plaintiffs' Fourth Amendment claim is directly foreclosed by <u>Rucker v. Harford County</u>, 946 F.2d 278, 281 (4th Cir. 1991). In <u>Rucker</u>, a police officer fired shots at the vehicle of a reckless driver, and one shot hit an innocent bystander. 946 F.2d at 279-80. The father of the innocent bystander asserted, *inter alia*, Section 1983 claims on the bystander's behalf against the police officers, alleging violations of constitutional rights secured by the Fourth Amendment. <u>Id.</u> at 280. The Fourth Circuit concluded that the Fourth Amendment provides no protection to a bystander because, under the circumstances, the bystander was not the individual seized by the police officers. <u>Id.</u> at 279. Critical to the Fourth Circuit's holding was its reasoning that "one is 'seized' within the Fourth Amendment's meaning only when one is the *intended object* of a physical restraint by an agent of the state." <u>Id.</u> at 281 (emphasis in original). Thus, the Fourth Circuit has clearly explained that "unintended consequences of government action cannot form the basis for a fourth amendment violation." <u>Id.</u>

As applied here, Plaintiffs have not alleged that they were the intended objects of the shooting that

8

took the decedent's life.  Plaintiffs do not allege facts supporting demonstrating that Plaintiffs themselves were the targets of Officer Jones.  Indeed, Plaintiffs do not even allege that they were in the vicinity of the shooting.  Thus, taking Plaintiffs' facts in the light most favorable to them, it is equally obvious that, while the decedent was the target of Officer Jones's firearm, Plaintiffs — Prince Carmen Jones, Sr., and Nina Jones — were not.  Because Plaintiffs have alleged insufficient facts to show that they were the ones "seized," within contemplation of the Fourth Amendment, Plaintiffs' Fourth Amendment claims must fail.[4]

Plaintiffs' Section 1983 claims alleging violations of the minor's and parents' Fourteenth Amendment rights also fail.  The Fourth Circuit's case in Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994) is instructive.  In Shaw, a citizen was shot and killed during an arrest by a state trooper.  13 F.3d at 793-96. The wife and minor children of the deceased citizen brought Section 1983 and state claims against a state trooper and his supervisor, alleging that the trooper was liable to the wife and children for violating their substantive due process "right" to enjoy the " the life, love, comfort, and support of their husband and father," without undue state interference.  Id. at 796-97.

The Fourth Circuit noted that other circuits have recognized two different versions of such a substantive due process claim.  Id. at 804.  Under the first version — a direct claim —  a plaintiff must show state actions that *directly injure* the relationship itself, as by the taking of a child from its parents custody.  Id.  The second version —  a derivative claim — allows a plaintiff to establish a violation if "any conduct which, though unrelated to the relationship, violates the constitutional right of any person in the

---

[4] Counts V, VI, and VII of Plaintiffs' complaint allege violations of Fourth Amendment rights. Thus, to the extent that Plaintiffs' Section 1983 claims are based on a violation of the parents' and minor's Fourth Amendment rights, these allegations fail to state a claim upon which relief may be granted.

relationship, on the theory that such conduct *incidentally injures* the relationship." Id. Emphasizing that the Supreme Court has "never held that the protections of substantive due process extends to claims based on governmental action which affects the family relationship only incidentally," the Fourth Circuit found the decedent's wife and minor child's claim were not actionable for a due process claim "resulting from governmental action affecting the family only incidentally." Id.

Shaw is apposite to the instant case as the decedent's minor child and father have also alleged Fourth Amendment deprivations arising from a police shooting death of an adult child. Thus, the question here is whether the harm that Plaintiffs allege — deprivation of their parental rights — amounts to a direct injury, which is cognizable, or an incidental injury, which is not cognizable.

Although the Fourth Circuit has not defined what constitutes direct injury, the First Circuit has provided some guidance. Direct injury is that which is directly aimed at the parent-child relationship. See Pittsley v. Warish, 927 F.2d 3, 8 (1st Cir. 1991) (holding that a mother and her two children failed to establish a Section 1983 claim where there was no evidence that threats made to the mother were directly aimed at the relationship between parent and child). Stated differently, in the direct injury context, the *aggrieved person* under Section 1983 is the target of state action which deprives the victim of their personal rights under the color of state law. Id. at 9 (emphasis added). Incidental injury, on the other hand, is that injury where the offending conduct is directed toward the *children* themselves and not the parent-child relationship. See Divergilio v. Skiba, 919 F.Supp. 265, 269 (E.D. Mich. 1996) (recognizing that plaintiff parents bringing a Section 1983 claim failed to prove that the governmental action was directed toward a protected aspect of the relationship and that the injury was not merely incidental) (emphasis added). Hence, the characterization of the injury as direct or incidental is determined by identifying the

target of the state actor's offending conduct.

Here, taking the facts in the light most favorable to the nonmovant, Plaintiffs' complaint alleges the following:  Officer Jones pulled his unmarked vehicle behind the decedent's vehicle, blocking its exit from a residential driveway, and fired sixteen shots at the decedent, five shots  striking Defendant in the back and one shot striking Defendant in the arm.  These actions were committed by Officer Jones under color of state law.  Officer Jones's shooting of the decedent was the twelth such shooting by PG County police officers of civilians within the last thirteen months.  Plaintiffs' constitutional rights under the Fourteenth Amendment were injured by the unconstitutional seizure of the decedent.  Plaintiffs' Fourteenth Amendment rights were injured by Officer Bailey's failure to properly supervise Officer Jones.  Plaintiffs were injured by the conduct of Chief Farrell and PG County in promulgating a policy and practice of providing poor training, discipline, and supervision of county police officers.  Despite Plaintiffs' assertions, however, none of these allegations claim any direct physical injury to Plaintiffs' persons inflicted as a result of Defendants' actions.  To the extent that Plaintiffs have alleged a constitutional violation, that violation was directed at the decedent, and not the decedent's parents or minor child.  Thus, while Plaintiffs' injury is not insignificant, Plaintiffs' alleged injuries were, as a matter of law, incidental to those injuries suffered by the decedent.

To be clear, the Court realizes that it may appear unjust to characterize the tragic events here as incidental.  As a consequence of sixteen shots fired from the service revolver of a law enforcement official, the bonds between parent and child were irretrievably broken, a minor child will experience her formative years in the absence of her natural father, and the survivors must ultimately bear the timeless grief of a loved one's loss of life.  Indeed, the manner and means by which a loved one met his death can have a direct bearing on the amount of grief and anguished occasioned by that demise.  A death from natural causes or

11

disease, for example, while devastating to the decedent's survivors, is more easily understood and accepted, than a violent death brought about by the actions of those persons who are deemed by society as the least likely to perpetuate such conduct.  The Court does not seek to diminish these grave tragedies.  Nevertheless, the Fourth Circuit has found it significant that the Supreme Court has "never held that the protections of substantive due process extend to claims based on governmental action which affects the family relationship only incidentally." Shaw, 13 F.3d at 805.  Accordingly, as Plaintiffs have failed to allege facts demonstrating governmental action that directly targets the parental relationship, Plaintiffs' Section 1983 claims are not cognizable under the Fourteenth Amendment.

B.      Remand of Pendent State Law Claims

        In addition to Plaintiffs' federal claims, the Second Amended Complaint also contained pendent state claims in Counts One, Two, Three, and Four.  Previously, this Court has already dismissed Count II and dismissed Count IV with respect to individual Defendants Chief Farrell and PG County.  Therefore, Plaintiffs' remaining state claims are Count One, Count Two (only with respect to Officer Jones), and Count Three.  As such, the threshold question before this Court is whether the Court should decline to exercise supplemental jurisdiction over the remaining pendent state claims.

        Under 28 U.S.C. § 1367, a court may decline to exercise such jurisdiction where:

        (1)     the claim raises a novel or complex issue of State law;

        (2)     the claim substantially predominates over the claim or claims over which the district court
                has original jurisdiction;

        (3)     the district court has dismissed all claims over which it has original jurisdiction;

        (4)     in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367.  Pursuant to § 1367, the Supreme Court has observed that when federal claims drop out of a case, a district court can retain a pendent state-law claim, dismiss it or, if it was removed, remand it to state court.  See Carnegie-Mellon University v. Cohill, 484 U.S. 343, 357 (1988); Hinson v. Northwest Financial South Carolina, Inc., 239 F.3d 611, 617 (4th Cir. 2001) ("[W]e conclude, that under the authority of 28 U.S.C. § 1367(c), authorizing a federal court to decline to exercise supplemental jurisdiction, a district court has inherent power to dismiss the case or, in cases removed from State court, to remand, provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met.").

In Carnegie-Mellon, the Court found the inherent power to remand removed State claims when the federal claims drop out is "derived from the doctrine of pendent jurisdiction." 484 U.S. at 355 n.11.[5] Rejecting the argument that a federal court must dismiss a case when it determines it will not decide the pendent State claims, the Supreme Court stated:

> Because in some circumstances a remand of a removed case will better accommodate these values [of economy, convenience, fairness, and comity] than will dismissal of the case, the animating principle behind the pendent jurisdiction doctrine supports giving a district court discretion to remand when the exercise of pendent jurisdiction is appropriate.

Id. at 351.  As such, a district court is advised to use the doctrine of supplemental jurisdiction with "flexibility" and, therefore, § 1367 allows district courts "to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." Id. at 350.

---

[5] Although Carnegie Mellon was decided prior to the codification of pendent jurisdiction in § 1367,, the Fourth Circuit has stated that it continues to inform the proper interpretation of § 1367.  See Hinson, 239 F.3d at 616 ("Because [§ 1367] is silent about how a district court declines to exercise supplemental jurisdiction, the principles inherent in supplemental jurisdiction, or pendent jurisdiction, as articulated by Carnegie-Mellon, continue to apply.").

By granting Defendants' Motion to Dismiss the federal claims, the court has dismissed all claims over which it has federal jurisdiction, and thus leaving only the pendent state law claims of Count One, Count Two (only with respect to Officer Jones), and Count Three before the Court.  This case therefore falls under § 1367, and the court must now determine two overlapping questions — whether to continue to exercise federal jurisdiction over pendent claims and whether the "balance of factors" discussed in Carnegie-Mellon, supports a remand.  See Hinson, 239 F.3d at 617 (stating that § 1367 lists the factors that inform the decision of whether to exercise federal jurisdiction over pendent State claims and when the exercise of this discretion involves the additional question of whether to remand the case to State court, the federal court should consider "principles of economy, convenience, fairness, and comity.").

As applied here, this Court concludes that it will decline to exercise federal jurisdiction over Plaintiffs' pendent state law claims.  This factor alone is sufficient for this Court will decline to exercise its discretion over Counts One, Two and Three because Plaintiffs' federal claims, over which the Court had jurisdiction, have been dismissed.

As an additional factor under §1367, the Court also notes that Count One raises a novel issue of state law involving the interpretation of the Maryland Declaration of Rights.  Count One alleges that the minor child and the decedent's parents rights were violated under Articles 24 and 26 of the Maryland Declaration of Rights.  In particular, Plaintiffs' Second Amended Complaint alleges that the minor child and parents state constitutional rights were violated by Officer Jones insofar as the decedent's due process rights of life and liberty and right not to be subjected to an unreasonable seizure are concerned.

Numerous Maryland decisions interpreting Articles 24 and 26 have held those Articles to be construed in pari materia with their federal counterparts, the Fourteenth Amendment and the Fourth

14

Amendment of the United States Constitution.  <u>See</u> <u>e.g.</u>, <u>Frankel v. Board of Regents</u>, 361 Md. 298, 313

(2000); <u>Verzi v. Baltimore County</u>, 333 Md.411, 417 (1994); <u>Grahan v. State</u>, 290 Md. 310 (1981);

<u>Liichow v. State</u>, 288 Md. 502, 509 n.1 (1980).  Ordinarily, to the extent that a provision of the Maryland

constitution is held to be in pari materia with a federal counterpart, the two constitutional provisions are

applied "in like manner and to the same extent" and "decisions of the Supreme Court on the [federal

provision] are practically direct authorities" for interpreting the Maryland provision.  <u>Attorney General of</u>

<u>Maryland v. Waldron</u>, 289 Md. 683, 704-05 (1981) (quotations omitted).

      Nevertheless, the Maryland Court of Appeals has never suggested that Maryland's constitutional

provisions are identical to their federal counterparts.  On the contrary, the Court of Appeals has held that

"simply because a Maryland constitutional provision is in pari materia with a federal one or has a federal

counterpart, does *not* mean that the provision will *always*  be interpreted or applied in the same manner

as its federal counterpart.  <u>Dua v. Comcast Cable of Md., Inc.</u>, 370 Md. 604, 621 (2002); <u>see</u> <u>also</u>

<u>Murphy v. Edmonds</u>, 325 Md. 342, 354-55 (1992) (stating that state and federal provisions in pari materia

are "obviously independent and capable of divergent application.").  Furthermore, a Maryland court has

"greater latitude" than this Court to decline to follow the Supreme Court's interpretation of the Maryland

Declaration of Rights.  <u>Green v. Zendrian</u>, 916 F.Supp. 493, 498 n.4 (D. Md. 1996); <u>see</u> <u>also</u> <u>Dua</u>, 370

Md. at 621 ("[C]ases interpreting and applying a federal constitutional provision are only persuasive

authority [for Maryland courts] with respect to the similar Maryland provision.").   Under these

circumstances, a Maryland Court might interpret Articles 24 and 26 similar to, or differently from, their

federal counterparts.

      This Court's research did not reveal any Maryland state cases discussing this issue.  As a result,

whether the minor child and the decedent's parents have a right to raise violations of their own constitutional rights is a complex and novel issue that properly belongs in Maryland state courts. Indeed, it is axiomatic that questions of state constitutional law are to be answered by state courts, rather than by the federal judiciary. <u>Green</u>, 916 F.Supp. at 498. In fact, the Supreme Court has cautioned federal courts that "needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer footed reading of applicable law." <u>United States v. Gibbs</u>, 383 U.S. 715, 726 (1966). Because a complex and novel issue of state law is involved in interpreting the Maryland Declaration of Rights, notions of comity restrain this Court from needlessly deciding issues of state law that are rightfully in the province of state courts.

Moreover, this Court believes that the balance of factors articulated in <u>Carnegie Mellon</u> support a remand. As previously articulated, notions of comity support allowing novel and complex issues of state constitutional law to be decided by Maryland state courts. Furthermore, the court does not find that litigating in the Circuit Court, where this issue was already raised and argued, poses any inconvenience to the parties. With regard to fairness, the Court notes that the parties will be faced with litigating the remaining state claims in a state court venue, and in the parallel action of <u>Mable Jones v. Prince George's County</u>, 04-3044 ("parallel case"), the parties must contest the remaining federal claims in a federal venue. As such, the Court acknowledges that in remanding these state claims to state court there *may* be claims of res judicata and collateral estoppel *if* the state court reads the state constitutional claims in pari materia with their federal counterparts. Because the state constitutional rights possess an independent animation, and in some circumstances the Declaration of Rights may require a result at variance with their federal counterparts, this Court cannot find that the decision to remand so adversely impacts the parties as to

16

outweigh the factors favoring remand.

Due to the strange and complex procedural history of this action, this Court has had to manage two parallel actions involving similar and, in some cases, identical claims arising from the tragic death of the decedent.  This case was brought to the Court's attention following the Defendant's removal of this action from state court, while the parallel case was transferred to this Court from the U.S. District Court for the District of Columbia.  The task of resolving the novel and distinct claims raised by the litigants has only been overshadowed by the Court having to manage this procedural nightmare originating from the bitter contest between two rival family members.  In light of these unusual circumstances, the Court believes that the decision to remand this action and to resolve the parallel case in a federal venue is not only warranted, but also best promotes the interests of justice.

In sum, Count One, involving the parents allegation of a violation of their state constitutional claims, will be remanded to state court.  For the sake of judicial economy, the remaining state law claims in Counts Two and Three will also be remanded.  Accordingly, Counts One, Two (only with respect to Officer Jones), and Three of Plaintiffs' Second Amended Complaint are remanded back to the appropriate state court.

II.     Motions for Summary Judgment

Also remaining are Plaintiffs' Motion for Summary Judgment and Plaintiffs-Intervenors' Motion for Summary Judgment.  The gravamen of both motions relate to issues of state law, *i.e.*, Maryland Wrongful Death claims.  As Plaintiffs state law claims are remanded back to state court, there is nothing left for this Court to decide.  Therefore, the Court will allow the wisdom of the state court to resolve these pending motions once this action is remanded.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss will be GRANTED as to Plaintiffs' federal claims, and Plaintiffs' state law claims will be REMANDED to the appropriate state court. Plaintiffs-Intervenors' Motion for Summary Judgment and Plaintiffs' Motion for Summary Judgment will be carried with this action and may be RESOLVED by the STATE COURT following remand. Defendants' Motion for Temporary Stay is hereby DENIED.  This action will be remanded back to the appropriate state court.  A separate Order will shortly follow.


April 28, 2005                                             /s/
Date                                    Alexander Williams, Jr.
                                        United States District Judge

18